EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ROBBINS,

        Plaintiff,                      No. 11-15140

v.                                  District Judge Robert H. Cleland
                                  Magistrate Judge R. Steven Whalen

JOHN PAYNE, ET AL.,

        Defendants.
_____ /

**REPORT AND RECOMMENDATION**

Plaintiff Michael Robbins, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), has filed a *pro se* civil complaint pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs in violation of the Eighth Amendment and retaliation in violation of the First Amendment. Before the Court is a Motion for Summary Judgment [Doc. #46] filed by Defendants Prison Health Services, Inc. ("PHS")(now known as Corizon Health, Inc.), Matthew Payne, P.A., Eddie Jenkins, M.D., and Bhamini Sudhir, M.D., which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that these Defendants be DISMISSED WITH PREJUDICE.

## I.   FACTS

On November 5, 2012, following the denial of his motion for a preliminary injunction, Plaintiff filed an amended complaint, by leave of the Court [Doc. #34].  He alleges that prior to his incarceration, he was treated for neurological problems arising from an automobile accident.  *Amended Complaint* [Doc. #34], ¶¶ 1-6.[1]  He was prescribed a number of medications, including Elavil, Neurontin, Paxil, and Vicodin. *Id*. ¶ 6.

Plaintiff alleges that in December, 2010, while an MDOC inmate, he was admitted to the Duane Waters Hospital ("DWH").  He claims that between January 8 and February 2, 2011, Defendant Payne, a physician's assistant, administered insulin overdoses that caused neuropathy.  *Id*. ¶¶ 10-12.  He states that doctors and nurses at DWH warned Payne that such large doses of insulin could cause neuropathy.  *Id*. ¶ 16.  Plaintiff was then prescribed Neurontin for neuropathy, and has since experienced "constant pain, nausea, weakness, diarrhea, etc."  *Id*. ¶¶ 17-18.

Plaintiff alleges that although his discharge instructions from DWH called for continued use of Neurontin, once he was back at the prison, Defendant Dr. Stieve ordered Neurontin discontinued.  *Id*. ¶¶ 20-24.

Plaintiff alleges that he was seen by Defendant Dr. Sudhir in April of 2011.  He

_____

[1] In his response [Doc. #50, p. 3], Plaintiff states that the automobile accident occurred in March of 1999.

states that although Dr. Sudhir acknowledged Plaintiff's "severe pain," he refused to prescribe appropriate pain medication or to refer him to a neurologist. *Id*. ¶ ¶ 25-29, 32-33. According to Plaintiff, Dr. Sudhir attributed his pain to his not wanting to take diabetes medication. *Id*. ¶ 29.

On June 16, 2011, Plaintiff had an appointment with Defendant Dr. Jenkins. He alleges that although Dr. Jenkins acknowledged his neuropathy and pain issues, he refused to prescribe pain medication. He states that Dr. Jenkins attributed his pain to his refusal to take diabetes medication. *Id*. ¶¶ 34-38. Dr. Jenkins refused to refer Plaintiff to a neurologist. *Id*. ¶ 41. Plaintiff claims that Dr. Jenkins inappropriately prescribed Tegretol for his neuropathy, and denied Plaintiff's "off formulary medication request." *Id*. ¶¶ 50-52. Plaintiff claims to have suffered irregular heartbeat, headaches, and abdominal pain as the result of Tegretol. *Id*. ¶ 54. On October 13, 2011, Dr. Jenkins discontinued Tegretol and prescribed Elavil. *Id.* ¶ 56. He declined Plaintiff's request for a Neurontin prescription. *Id*. ¶ 57. According to Plaintiff, Dr. Jenkins told him that now that a lawsuit was filed, "the court would have to prescribe" Neurontin. *Id.* ¶ 58.

Plaintiff brings a claim of deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against all Defendants. He also brings a First Amendment retaliation claim against Dr. Jenkins.[2]

---

[2] Plaintiff concedes that summary judgment should be granted as to Defendant PHS. *Plaintiff's Response*, Doc. #50, pp. 2-3.

Exhibit D to Defendants' motion is the affidavit of Matthew Payne, P.A., who was employed by Corizon Health, Inc. at the time of the events giving rise to this lawsuit. Payne states that Plaintiff was admitted to DWH for wound care in December of 2010, and that he noted Plaintiff's history of poorly controlled diabetes. Plaintiff complained of neuropathy and was given Neurontin. *Payne Affidavit*, ¶ 5.  Payne states that diabetic neuropathy is a progressive condition most commonly caused by poorly controlled diabetes, but not by "insulin overdoses" or low blood glucose levels.  *Id*. ¶ 6. The Plaintiff was discharged with instructions to continue his medications, monitor his sugar levels closely, and be compliant with a diabetic diet.  *Id*. ¶ 7.

Defendants submit the affidavit of Dr. Bhamini Sudhir as Exhibit A. Dr. Sudhir, who was also employed by Corizon, notes Plaintiffs history of non-compliance with medical treatment, which has resulted in poorly controlled diabetes.  Referring to Plaintiff's medical records, which have been filed under seal [Doc. #48 ], Dr. Sudhir states that prior to his arrival at the prison in April of 2011, Plaintiff was repeatedly advised that his diabetes had to be under control in order to address his frequent complaints of pain, but he "refused to receive any treatment for his diabetes." *Sudhir Affidavit*, ¶¶ 5-6; *Medical Records*, pp. 1-127.  On April 27, 2011, Dr. Sudhir saw Plaintiff for a "chronic care appointment," at which Plaintiff complained of peripheral neuropathy.  *Sudhir Affidavit*, ¶ 8.  Dr. Sudhir explained that high blood sugar levels were responsible for the neuropathy, but Plaintiff, becoming agitated and angry, refused to

-4-

accept any diabetes medication, indicating that he only wanted pain medication. He walked out of the appointment. Dr. Sudhir states that out of concern for Plaintiff's well-being, she referred him to mental health services for an evaluation of his competency to refuse medication. *Id*. ¶ 9.

On May 16, 2011, Dr. Sudhir reviewed Plaintiff's chart, and she saw him on May 17, 2011. At that appointment, Plaintiff again refused to discuss his hypertension or diabetes. Dr. Sudhir explained that his neuropathy was made worse by his hyperglycemia, but Plaintiff would not listen to her medical advice. *Id*. ¶ 11-12. Dr. Sudhir states, "I did not refer Mr. Robbins to a neurologist because it was not medically indicated. What Mr. Robbins needed was to take medications and allow treatment of his diabetes and hypertension, which could in turn lessen or resolve his neuropathy." *Id*. ¶ 13. She states further that she "did not deny Mr. Robbins medical treatment for any medical concerns or symptoms. To the contrary, Mr. Robbins refused to comply with my recommended course of treatment." *Id*. ¶ 14.

Defendants' Exhibit C is Dr. Harriet Squier's affidavit. Part of her duties as an employee of PHS/Corizon is to review the medical files of MDOC inmates when there is a question regarding their medical care. Accordingly, she reviewed the Plaintiff's medical file (which has itself been filed under seal), and based on those records, summarized what she termed "a true and accurate chronology relating to Plaintiff's care and treatment during the relevant time period." *Squier Affidavit*, ¶¶ 2-3.

Dr. Squier states that Plaintiff suffers from diabetic neuropathy and complaints of chronic pain.  He has a history of poorly controlled diabetes and noncompliance with treatment.  He is seen by medical staff "a couple of times a week" because of his diabetes. *Id*. ¶¶ 4-5.  Dr. Squier states that chronic pain is appropriately treated with long-acting pain medication, and that the Plaintiff has been provided with several such medications recommended by the prison's Pain Management Committee ("PMC"). These medications have included Tegretol (September 30 to October 30, 2011), Elavil (October 14, 2011 to January 11, 2012), and Pamelor thereafter.  *Id*. ¶¶ 7-11.  Dr. Squier states that Neurontin, another long-acting pain medication, is rarely prescribed to inmates because it is highly addictive and often abused by the prison population, and is not superior to other long-acting pain medications.  *Id*. ¶ 12. She states that Plaintiff was not referred to a neurologist because that was not medically indicated, and Plaintiff's diagnosis was not in question.  *Id*. ¶ 13.

On September 7, 2011, medical staff saw Plaintiff in his cell, in response to his complaints of pain. He was given Toradol. He returned to the medical unit the following day, and had a normal exam.  *Id*. ¶ 14.

In summary, Dr. Squier states,

> "Mr. Robbins has been provided continuous and appropriate medical evaluations, care and treatment for his diabetic neuropathy including continuous treatment of his underlying diabetes and the administration of multiple long acting pain medications for chronic pain in accordance with the recommendations of the PMC."  *Id*. ¶ 15.

Attached to Plaintiff's response [Doc. #50] are medical records created following his 1999 automobile accident, when he was a free citizen. Those records show that he was prescribed numerous medications, including Neurontin, Pamelor, and Elavil, through the early 2000's. He has also included MDOC records showing a diagnosis of diabetic neuropathy and non-compliance with medical treatment recommendations.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a

-7-

whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

#### A.   Eighth Amendment

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825,

-8-

834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702

(6ᵗʰ Cir. 2002). Under the objective component, "the plaintiff must allege that the medical

need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff

must allege facts which, if true, would show that the official being sued subjectively

perceived facts from which to infer substantial risk to the prisoner, that he did in fact

draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference

may be established by showing an interruption of a prescribed plan of treatment, or a

delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6ᵗʰ Cir. 1992).

However, mere negligence or misdiagnosis of an ailment does not rise to the level of a

constitutional violation. *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703. "Where a

prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857,

860, n.5 (6ᵗʰ cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6ᵗʰ Cir. 1999),

citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does

not include negligence in diagnosing a medical condition").

   Moreover, "a prisoner has no right to choose a specific form of medical

treatment," so long as the treatment provided is reasonable, *Harrison v. Barkley,* 219 F.3d

132, 138–140 (2d Cir.2000), and "mere disagreement as to the proper medical treatment"

is insufficient to state a constitutional violation. *Spruill v. Gillis,* 372 F.3d 218, 235 (3d

Cir.2004) (citations omitted).  *See also Perkins v. Kan. Dep't of Corr.,* 165 F.3d 803, 811

(10th Cir.1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed

course of treatment does not state a constitutional violation.")

Plaintiff has met the objective prong of the Eighth Amendment case by showing

that he suffers from a sufficiently serious medical condition.  However, his case falters on

the subjective prong, because it cannot be said that the Defendants, being aware of his

condition, were deliberately indifferent. To the contrary, Plaintiff received frequent and

continual medical care, as evidenced by the affidavits of his providers and his medical

records from the MDOC.  Plaintiff chose to reject his doctors' attempts to help him keep

his diabetes–and hence his diabetic neuropathy–under control. That he disagreed with the

diagnosis or the prescribed treatment, however, does not state an Eighth Amendment

violation.  *Harrison, supra*. While Plaintiff may have preferred to be prescribed

Neurontin, the Defendants' decision to provide him with alternative and, in their view,

equally effective long-term pain medication, was reasonable.  Indeed, two of the

medications–Pamelor and Elavil–were prescribed by his own doctors before he was an

MDOC inmate.  In any event, to the extent that Plaintiff questions the Defendants'

medical judgment and the effectiveness of the treatment he received, he has at most stated

a claim of medical malpractice, which is not actionable under § 1983. *Westlake, supra*.  In

*Gabehart v. Chapleau,* 1997 WL 160322, *2 (6th Cir.1997), the Sixth Circuit stated:

> "It is clear, in hindsight, that [plaintiff] was misdiagnosed on several
> occasions and that, as a result, his course of treatment was inadequate and

-10-

he suffered considerably. It may even be the case, as [plaintiff's] expert witnesses testified, that the treatment [Plaintiff] received fell below professional standards. *Misdiagnoses, negligence, and malpractice are not, however, tantamount to deliberate indifference*." (Emphasis added).

Therefore, Defendants should be granted summary judgment on the Plaintiff's Eighth Amendment claim.

## B.   Retaliation

A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Filing a lawsuit is clearly protected conduct.  However, Dr. Jenkins' decision not to  prescribe Neurontin cannot be considered an adverse action, because Plaintiff was given alternative long-acting pain medication. He was not denied treatment. In fact, he declined treatment for diabetes and diabetic neuropathy that may well have resolved his neuropathy.

Finally, there is no causal connection between the lawsuit and Dr. Jenkins' refusal to provide Plaintiff with Neurontin. It was initially Dr. Stieve, not Dr. Jenkins, who declined to authorize Neurontin, a decision affirmed by Dr. Sudhir.  The alternative pain medications, including Tegretol, Elavil, and Pamelor, were authorized by the prison's

Pain Management Committee, not by Dr. Jenkins.  Moreover, the decision to not

prescribe Neurontin was made before Plaintiff filed his lawsuit.

Under these facts, no rational trier of fact could find that Dr. Jenkins retaliated

against Plaintiff for having filed a lawsuit, and this claim should be dismissed.

## C.   Defendant Prison Health Services

Plaintiff concedes that summary judgment is appropriate as to Defendant PHS.

## IV.   CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment

[Doc. #46] be GRANTED.

Any objections to this Report and Recommendation must be filed  within fourteen

(14) days of service of a copy hereof, including weekends and intervening holidays, as

provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,*

474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932

F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of

objections which raise some issues but fail to raise others with specificity will not

preserve all the objections a party might have to this Report and Recommendation.  *Willis*

*v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local*

*231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy

of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: August 14, 2014

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 14, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager to the<br>
Honorable R. Steven Whalen